USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/2/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Bamba Harina,

Petitioner,

-against-

LaDeon Francis, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; David Venturella, in his official capacity as Acting Director U.S. Immigration and Customs Enforcement; Markwayne Mullin in his official capacity as Secretary of Homeland Security; Todd Blanche, in his official capacity as Attorney General; U.S. Department of Homeland Security and U.S. Immigration and Customs Enforcement,

Respondents.

26 Civ. 8232 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, Harina Bamba,[1] petitions for a writ habeas corpus under 28 U.S.C. § 2241, following his detention by Immigration and Customs Enforcement ("ICE") for third-country removal. *See* Am. Pet., ECF No. 14; *see also* Opp., ECF No. 18; Reply, ECF No. 21. For the reasons stated below, the petition is GRANTED.

**BACKGROUND**

Bamba is a native of Côte d'Ivoire who was admitted to the United States, allegedly using a passport and non-immigrant visa bearing a different name, on September 1, 2008. *See* Opp. at 2; Vera Decl. ¶ 4, ECF No. 16. On January 16, 2009, Bamba filed an application for asylum and withholding of removal, and an immigration judge granted withholding of removal to Côte d'Ivoire in July 2013. *See* Opp. at 2–3; Order Withholding Removal ("Withholding Order"), ECF No. 15-5; Am. Pet. ¶ 31. At that time, the immigration judge designated Mali as an alternative country of

[1] Despite the fact that Petitioner styled his name as Bamba Harina in the caption of his amended petition, *see* Am. Pet., ECF No. 14, his first name is Harina and his last name is Bamba, *see id.* ¶ 1.

removal. *See* Opp. at 3; Withholding Order at 1; Am. Pet. ¶ 31. Bamba did not appeal, and he was not detained by ICE or subject to an order of supervision following the Withholding Order. *See* Opp. at 3; Am. Pet. ¶ 2. Since the Withholding Order was issued over a decade ago, Bamba has lived in Manhattan with his U.S. citizen wife, Aminata Fanny, and their six children. Am. Pet. ¶¶ 32–33. Bamba has a valid work authorization and an approved I-130 petition through his wife. *Id.* ¶¶ 3-5; ECF No. 9-3 (notice of approval of I-130 petition); ECF No. 9-5 (work authorization).

Thirteen years after the Withholding Order was granted, on the evening of September 18, 2026, Bamba received a call-in letter asking him to appear at Federal Plaza on September 22, 2026. Am. Pet. ¶¶ 34-35; ECF No. 9-3 (call-in letter). When Bamba arrived with his wife and two of his children on September 22, federal officers separated them, detained Bamba, and informed him that he would be deported to the Republic of Ghana. Am. Pet. ¶¶ 4, 7, 37; Vera Decl. ¶ 18.

According to the State Department, Ghana has agreed to accept Bamba for third-country removal. *See* Opp. at 4; Cam Decl. ¶¶ 5–7, ECF No. 17. Bamba argues that his detention for removal to Ghana is unlawful and cites evidence that removal to Ghana creates a serious risk of onward removal to Côte d'Ivoire, where the immigration judge who issued the Withholding Order found he is "more than likely to be persecuted." Am Pet. ¶ 31; *see also* Reply at 8, ECF No. 21; Barker-Vormawor Decl. ¶¶ 7, 17–19, 27, ECF No. 21-1. Because "Ghana provided diplomatic assurances" that individuals deported from the United States "will not be persecuted or tortured," the government argues that Bamba "has no right to an additional opportunity to raise a fear claim." Opp. at 19; *see also* Landau Letter, ECF No. 15-7 (affirming "that the State Department stands by the determination" that Ghana's diplomatic assurances are credible).

On September 22, 2026, Bamba filed the instant petition, *see* Pet. at 1, ECF No. 1, which he amended on September 28, 2026, *see* Am. Pet. On October 6, 2026, the Court ordered Bamba's

release pending the adjudication of this matter, pursuant to *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001). *See Mapp v. Reno* Order, ECF No. 22.

**DISCUSSION**

I. Availability of Relief

The government argues that Bamba's petition must be denied because (1) the Court lacks jurisdiction, and (2) Bamba cannot litigate his claims individually because they duplicate the class action lawsuit *D.V.D. v. Dep't Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025), *opinion clarified*, No. 25 Civ. 10676, 2025 WL 1323697 (D. Mass. May 7, 2025), and *opinion clarified*, No. 25 Civ. 10676, 2025 WL 1453640 (D. Mass. May 21, 2025); *reconsideration denied sub nom.*, *D.V.D. v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass 2025), and *appeal dismissed and remanded*, No. 25-1393, 2026 WL 1102937 (1st Cir. Feb. 20, 2026), and *aff'd in part*, No. 26-1212, 2026 WL 2797801 (1st Cir. Sept. 18, 2026), *cert. granted*, No. 26-426, 2026 WL 2917860 (U.S. Sept. 29, 2026) (mem.) (the "*D.V.D.* litigation"). *See* Opp. at 9, 13–15. The Court considers these threshold issues in turn.

A. Jurisdiction

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of . . . custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The government argues that, based on this principle, the Court lacks jurisdiction to consider Bamba's petition, because Bamba's argument that review of his status by an immigration judge is required before third-country removal is not relevant to the "legal propriety of Petitioner's current detention." *See* Opp. at ¶¶ 12–14 (emphasis omitted). Not so. Bamba expressly challenges "[his] ongoing detention" as unlawful, Am. Pet. ¶¶ 1–2, and seeks "immediate release from custody." Am. Pet. at 32. Such claims "fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025); *see, e.g., Loja Loja v. Acting Field Off.*

*Dir. of N.Y. Ice Enf't and Removal Operations*, 26 Civ. 5368, 2026 WL 2321934, at *2 (S.D.N.Y. Aug. 10, 2026).

The government also cites *Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221 (S.D.N.Y. 2019), to argue that the Court "lacks jurisdiction to order immigration judge review before Petitioner can be removed to a third country." Opp. at 12. That case is inapposite. *Asylum Seeker Advoc. Project* applied the Immigration and Nationality Act's ("INA") provisions that strip district courts of jurisdiction over challenges to orders of removal, redirecting "all questions of law and fact . . . arising from any action taken or proceeding brought to remove [a noncitizen] from the United States" for review by the Courts of Appeals. 409 F. Supp. 3d at 224 (quoting 8 U.S.C. §§ 1252(a)(5), (b)(9)).

Here, Bamba is not "challenging the decision . . . to seek removal [or] any part of the process by which his removability [was] determined." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Rather, he "do[es] quite the opposite of challeng[ing his] order[] of removal—[he] seek[s] to hold [Respondents] to the terms of [his] order[ of removal] and to receive notice and an opportunity to be heard before [Respondents] explicitly exceed" the Withholding Order by removing him to a country not identified in the Withholding Order. *D.V.D.*, 778 F. Supp. 3d at 372 (citing *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1006 (W.D. Wash. 2019)); *see also D.V.D.*, 2026 WL 2797801, at *11. Holding otherwise would make Bamba's constitutional claims "effectively unreviewable," because the deadline for filing a petition for review is long passed. *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018); *see also* 8 U.S.C. § 1252(b)(1) (providing that a petition for review "must be filed not later than 30 days after the date of the final order of removal"). The Supreme Court has warned against construing the INA to produce such "absurd" results. *Jennings*, 583 U.S. at 293. Because the INA provision that barred jurisdiction in *Asylum Seeker Advoc. Project* "has no role to play" on these facts, *Zhang*, 814 F. Supp. 3d at 320, the government's reliance on this case is misplaced.

This Court, therefore, rejects the government's argument that it lacks jurisdiction.

B. Impact of the *D.V.D.* Litigation

The government further contends that relief is "barred because [Bamba] is a class member of [the *D.V.D.* litigation], and he cannot seek individual relief here." Opp. at 14. The government is mistaken.

1. Federal Rule of Civil Procedure 23

"[A] judgment in a properly entertained class action," *once entered*, "is binding on class members in any subsequent litigation." *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984). Before a judgment is entered, separate lawsuits by individual class members may be dismissed as duplicative of the class action. *See, e.g., Adams v. Tracy*, No. 21 Civ. 33, 2024 WL 1109091, at *4 (N.D.N.Y. Mar. 14, 2024) (noting magistrate judge's recommendation that the plaintiff "be directed to show cause . . . why the [c]ourt should not dismiss this case as duplicative if [p]laintiff is still a class member in [a class action lawsuit addressing the same issues]"); *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296 (E.D.N.Y. 1985), *aff'd in part, rev'd in part*, 818 F.2d 226 (2d Cir. 1987) ("Some attorneys filed individual lawsuits on behalf of their clients, but those cases have been dismissed as duplicative of the class action."). But dismissing duplicative litigation is discretionary, not mandatory. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("[A] district court *may* stay or dismiss a suit that is duplicative of another federal court suit." (emphasis added)). Moreover, dismissing a class member's individual lawsuit as duplicative is inappropriate if it asserts different rights or seeks different relief from the class action. *See Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (explaining that, for the rule against duplicative litigation to apply, "the case must be the same" with the "same relief prayed for" (citation omitted)).

2. Application

The *D.V.D.* litigation does not provide a basis for dismissing Bamba's petition.[2] First, the litigation is ongoing, and the district court's injunction barring third-country removals was stayed. *See Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025) (staying injunction). The *D.V.D.* litigation, therefore, has no preclusive effect on class members. *See Cooper*, 467 U.S. at 874.

Additionally, Bamba's petition is not the "same case" as the *D.V.D.* litigation. *Sacerdote*, 939 F.3d at 504 (citation omitted). The *D.V.D.* litigation seeks to "declare [DHS' third-country removal] policies unlawful and to set them aside, to enjoin DHS from continuing to fail to provide meaningful advance notice in writing and the opportunity to present a fear-based claim to an [immigration judge] prior to any deportation to a third country, and to order DHS to return . . . class members who have been deported without these procedural protections." Complaint ¶ 6, *D.V.D.*, 779 F. Supp. 3d 355, ECF No. 1. By contrast, Bamba "is asserting his individual claims, based on his individual circumstances, rather than claims for systemic relief." *D.J.R.R. v. Genalo*, No. 26 Civ. 3124, 2026 WL 1746716, at *8 (E.D.N.Y. June 17, 2026) (citation omitted), *appeal docketed*, No. 26-2306 (2d. Cir. Aug. 18, 2026). He also seeks different relief, notably release from detention. *See* Am. Pet. at 32; *see also Sacerdote*, 939 F.3d at 504 (explaining that litigation is not duplicative if it seeks different relief). Recognizing these distinctions, courts across the country have addressed habeas claims by petitioners threatened with third-country removal "without evident concern that doing so encroached on the *D.V.D.* court's jurisdiction." *Dia v. Raycraft*, No. 26 Civ. 1054, 2026 WL 1476507, at *5 (W.D. Mich. May 27, 2026) (collecting cases). The fact that the injunction in the *D.V.D.* litigation is stayed, *see* 2026 WL 2917860, further counsels in favor of hearing Bamba's petition. *See Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025) (finding it "counterintuitive that

[2] The Court assumes that Bamba is a *D.V.D.* class member for the purpose of this analysis.

non-opt-out class membership . . . could prevent individuals from making their own claims for due process while [an] injunction is stayed on a class-wide basis").

Finding that no threshold issues bar review of Bamba's petition, the Court proceeds to the merits.

II. Merits

Because 8 U.S.C. § 1231(a)(6) does not provide a basis for the government's detention of Bamba, the Court concludes that it is unlawful.[3]

A. Detention under § 1231(a)(6)

Individuals with a final order of removal are subject to detention under 8 U.S.C. § 1231. Once a noncitizen's order of removal becomes administratively final, ICE has a 90-day period, known as the removal period, to secure the noncitizen's removal. *See* § 1231(a)(1). Detention is mandatory during the removal period. *See* § 1231(a)(2). If ICE fails to effectuate the noncitizen's removal, § 1231(a)(6) authorizes permissive detention of certain noncitizens "beyond the removal period." § 1231(a)(6). This language "provides for a period of continued detention" when a noncitizen is already in custody, not "a free-roaming right to arrest and detain people any time it sees fit, even [more than] a decade after the fact." *Diallo v. Joyce*, 817 F. Supp. 3d 202, 205 (S.D.N.Y. 2025). Additionally, to comport with the Due Process Clause, the Supreme Court has read § 1231(a)(6) to include a presumptive six-month limit on detentions following the removal period, and to require release of a noncitizen when there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

[3] The government alleges that Petitioner used someone else's visa in order to gain admission to the United States and is therefore inadmissible under 8 U.S.C. § 1182(a)(6)(C), rendering him subject to detention under § 1231(a)(6), notwithstanding that ICE listed different charges on Bamba's Notice to Appear ("NTA"). *See* Opp. at 10–11. Because the Court holds that detention under § 1231(a)(6) is presently unlawful even assuming Bamba may be treated as inadmissible for the purpose of § 1231(a)(6), it need not reach whether failing to charge Bamba with inadmissibility on the NTA precludes detention under § 1231(a)(6).

The government must also provide sufficient process with respect to immigration detention to satisfy the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez v. Decker*, 978 F.3d 842, 851–55 (2d Cir. 2020). To determine whether due process is satisfied, the Court balances: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

B. Application

Bamba was never previously detained or subject to an order of supervision,[4] Am. Pet. ¶ 2, and "the 90-day removal period triggered by [his final removal order] is long past." *Parra v. Favro*, No. 26 Civ. 363, 2026 WL 1030870, at *5 (N.D.N.Y. Apr. 16, 2026). As a result, his detention cannot be "continued" under § 1231(a)(6). *Diallo*, 817 F. Supp. 3d at 205. The government, therefore, lacks a statutory basis to arrest and detain him. *Id.* at 204–08; *see also Parra*, 2026 WL 1030870, at *4 (collecting cases holding that § 1231(a)(6) does not authorize detention years after the 90-day removal period ends).

Although § 1231(a)(6) does not preclude the government from "briefly detain[ing a noncitizen] for purposes of effecting [their] removal" if removal is "*imminent*," *Diallo*, 817 F. Supp. 3d at 208, that narrow exception does not apply to Bamba because his planned removal violates due process. *Cf. Navarro-Maury v. Hermosillo*, No. 26 Civ. 333, 2026 WL 1413166, at *4 (W.D. Wash. May 20, 2026) (explaining that "the relevant question is whether [a] *lawful* removal is foreseeable—

[4] Bamba is currently subject to an order of supervision under his temporary release under *Mapp v. Reno*. *See* Letter, ECF No. 25. However, this order of supervision was only imposed upon his release on October 6, 2026, and was not a condition prior to his detention on September 22, 2026. *See id.*; *see also* ECF No. 24 (letter certifying date and time of release).

not whether the government could effectuate an unlawful removal absent judicial oversight" (emphasis in original) (internal quotation marks and citation omitted)).

"To comply with due process, the [g]overnment must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country." *Castillo Rivas v. Bondi*, No. 26 Civ. 0134, 2026 WL 295705, at *5 (W.D. Wash. Feb. 4, 2026). The government also "has an affirmative obligation to make a determination regarding a noncitizen's claim of fear before deporting him." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (W.D. Wash. 2019). "[I]f a noncitizen claims fear of removal to a designated third country, the [g]overnment must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge." *Castillo Rivas*, 2026 WL 295705, at *5; *accord D.J.R.R.*, 2026 WL 1746716, at *8.

The government's stated intention to (1) rely on generalized assurances from Ghana that it will not torture deportees, and (2) not afford Bamba "an additional opportunity to raise a fear claim," Opp. at 13, does not comply with these standards. Additionally, a lawyer in Ghana has stated that "a person removed to Ghana today faces a real and foreseeable risk of onward refoulement." Barker-Vormawor Decl. ¶ 7(d). Many of the noncitizens already transported from the United States to Ghana have "been sent onward by Ghana to their countries of origin, frequently within hours or days of arrival." *Id.* ¶ 17. These repatriations have occurred after Ghana had provided 'diplomatic assurances' that individuals would not be tortured. *See D.A. v. Noem*, 800 F. Supp. 3d 43, 49–50 (D.D.C. 2025). The government has previously conceded in other litigation that "it appears Ghana is violating the assurances it provided to the United States." *Id.* at 46. Analyzing materially analogous facts, other courts have found that third-country removal would violate due process. *See, e.g.*, *D.J.R.R.*, 2026 WL 1746716, at *9; *Sagastizado*, 802 F. Supp. 3d at 1012–13; *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1138 (E.D. Cal. 2025); *see also D.V.D. v. U.S. Dep't Homeland Sec.*, 821 F. Supp.

3d 102, 153–165 (D.Mass. 2025), *aff'd in part, vacated in part*, 2026 WL 2797801 (reasoning that the third-country removal policy systemically violates due process).

The Court holds, therefore, that the government's plan to remove Bamba to Ghana, without permitting him to "pursue withholding of removal through reopened removal proceedings before an immigration judge," violates due process. *Castillo Rivas*, 2026 WL 295705, at *5. Each *Mathews* factor weighs in Bamba's favor: (1) the private interest is significant, as Bamba may be sent back to Côte d'Ivoire where he would face persecution, Barker-Vormawor Decl. ¶¶ 7, 17, 28; (2) the risk of an erroneous deprivation is high, because Bamba was provided minimal notice of his country of removal, Vera Decl. ¶ 18, and the government denies that he has any right to raise an individualized fear-based claim, Opp. at 13; and (3) "while the government has a significant interest in the prompt execution of removals, there is also a strong public interest in ensuring noncitizens are not wrongfully removed to countries where they face harm," *D.J.R.R.*, 2026 WL 1746716, at *9 (citation omitted).

Without a statutory basis to detain Bamba and no lawful plan for his removal, Bamba's detention is unlawful. "The typical remedy for [unlawful] detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The government must, therefore, release Bamba from custody.

## CONCLUSION

The government is directed to restore the *status quo ante* Bamba's unlawful detention, maintaining his release pursuant to the *Mapp v. Reno* Order and terminating any conditions of supervision imposed after September 21, 2026. The government shall not detain Bamba for removal to Ghana without first allowing him to pursue an application for withholding of removal. The government shall not detain Bamba for removal to a third country without providing notice and a meaningful opportunity for Bamba to present a claim of fear of persecution or harm that complies with the due process requirements set forth in this order.

Petitioner's request for discovery and motion to file a second amended petition and complaint are DENIED as moot. *See* Reply at 18, 20; Pre-Motion Letter, ECF No. 28. Both parties' requests with respect to conditions of release pending adjudication of the petition are similarly DENIED as moot. *See* ECF No. 25.

By **November 4, 2026**, at **11:59 p.m. EST**, the government shall file a letter on the docket certifying that it shall comply with the terms of this order.

SO ORDERED.

Dated: November 2, 2026
New York, New York

ANALISA TORRES
United States District Judge